UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

KELLY S.,

                  Plaintiff,

      v.

COMMISSIONER OF SOCIAL
SECURITY,

                  Defendant.

_____

**DECISION AND ORDER**

1:22-CV-00017 CDH

## INTRODUCTION

Plaintiff Kelly S. ("Plaintiff") seeks review of the final decision of the Commissioner of Social Security ("the Commissioner" or "Defendant") denying her applications for disability insurance benefits ("DIB") and supplemental security income ("SSI"), pursuant to Titles II and XVI of the Social Security Act (the "Act"). (Dkt. 1). Under Rules 5 through 8 of the Supplemental Rules for Social Security Actions Under 42 U.S.C. § 405(g) and Local Rule of Civil Procedure 5.5(d), the matter has been presented for decision by the parties' filing of motions for judgment on the pleadings. (*See* Dkt. 9; Dkt. 10; Dkt. 11). For the reasons that follow, the Court denies Plaintiff's motion and grants the Commissioner's motion.

## BACKGROUND

On August 19, 2009, Plaintiff protectively filed applications for DIB and SSI. (Dkt. 6 at 33, 120-21).[1] Her applications were initially denied on January 19, 2010.

---

[1]     In referencing the administrative transcript, the Court has referred to the page numbers generated by CM/ECF and found in the upper right corner of the documents.

(*Id*. at 33, 132-38). Plaintiff requested a hearing before an administrative law judge ("ALJ") (*id*. at 144-45), which was held on May 4, 2011 (*id*. at 96-119). On May 20, 2011, the ALJ issued an unfavorable decision. (*Id*. at 30-49). Plaintiff sought review from the Appeals Council, which denied her request on August 30, 2012. (*Id*. at 10-25). Plaintiff commenced an action in this District and on May 30, 2014, the Hon. William M. Skretny entered a Decision and Order remanding the matter to the Commissioner for further administrative proceedings. (Dkt. 6 at 1026-32).

On remand, an additional hearing was held before an ALJ. (*Id*. at 987-1018). The ALJ issued an unfavorable decision on April 22, 2015. (*Id*. at 940-58). Following proceedings before the Appeals Council (*see id*. at 931-35, 1462), Plaintiff again sought review in this District. On September 23, 2020, the Hon. Mark W. Pedersen entered a Decision and Order remanding the matter for further administrative proceedings. (*Id*. at 1460-72).

The Appeals Council ordered a new hearing, which was held before an ALJ on July 21, 2021. (*Id*. at 1321-53). The ALJ issued an unfavorable decision on September 27, 2021. (*Id*. at 1295-1320). This action followed.

## LEGAL STANDARD

### I.    Administrative Determination of Disability

The Social Security Administration's ("SSA") regulations establish a five-step, sequential evaluation that an ALJ follows in determining whether a claimant is disabled within the meaning of the Act. *See Sczepanski v. Saul*, 946 F.3d 152, 156 (2d Cir. 2020); 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ determines whether the claimant is currently engaged in substantial gainful work activity. 20

- 2 -

C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not, the ALJ continues to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act. *Id*. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment is "severe" within the meaning of the Act if it significantly limits the claimant's physical or mental ability to do basic work activities. *Id*. §§ 404.1520(c), 416.920(c).

If the claimant has at least one severe impairment, the ALJ proceeds to step three. There, the ALJ determines whether the claimant's impairment or impairments meet or medically equal the criteria of the impairments listed in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id*. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the claimant does not have an impairment that both meets or medically equals a Listing and satisfies the Act's durational requirement, *see id*. §§ 404.1509, 416.909, the ALJ must determine the claimant's residual functional capacity ("RFC"), *id*. §§ 404.1520(e), 416.920(e). "The Social Security regulations define residual functional capacity as the most the claimant can still do in a work setting despite the limitations imposed by his impairments." *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *see* 20 C.F.R. §§ 404.1545, 416.945.

At step four, the ALJ determines whether, in light of the RFC assessment, the claimant is capable of performing any past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  If the claimant is unable to perform any past relevant work, the ALJ proceeds to the fifth and last step. At this step, the burden shifts to the Commissioner to demonstrate that, taking into account the claimant's age, education, work experience, and RFC, the claimant is capable of performing

- 3 -

substantial gainful work that exists in the national economy. *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *see* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## II.    Review by the Court

The Court has jurisdiction under 42 U.S.C. § 405(g) to review the Commissioner's final decision denying an application for DIB or SSI. It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation omitted). Instead, in performing its review, the Court is "limited to determining whether the [Commissioner's] conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Selian*, 708 F.3d at 417 (citation omitted). If the Commissioner's findings of fact are supported by substantial evidence, they are "conclusive." 42 U.S.C. § 405(g). In other words, "[i]f there is substantial evidence to support the determination, it must be upheld." *Selian*, 708 F.3d at 417.

"Substantial evidence means more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation omitted). However, "[t]he deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003).

## DISCUSSION

## I.    The ALJ's Decision

The ALJ applied the five-step, sequential evaluation described above in determining whether Plaintiff was disabled. Before proceeding to step one, the ALJ

found that Plaintiff met the insured status requirements of the Act through June 30, 2014. (Dkt. 6 at 1301).

The ALJ found at step one that Plaintiff had engaged in substantial gainful activity from October 1, 2020, through March 31, 2021. (*Id.*). However, the ALJ further found that there had been a continuous 12-month period during which Plaintiff did not engage in substantial gainful activity. (*Id.*). He accordingly addressed the remainder of his findings to the period during which Plaintiff did not engage in substantial gainful activity. (*Id.*).

The ALJ found at step two that Plaintiff had the severe impairments of major depressive disorder and generalized anxiety disorder. (*Id.*). The ALJ also concluded that Plaintiff had the following non-severe impairments: thyroid nodules; sleep apnea; orthostatic hypotension; and tachycardia. (*Id.* at 1302; *see id.* at 945).

The ALJ found at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any of the Listings. (*Id.* at 1302). At step three, the ALJ specifically discussed the criteria of Listings 12.04 and 12.06. (*Id.* at 1302-03).

The ALJ assessed Plaintiff's RFC and determined that Plaintiff retained the ability to perform a full range of work at all exertional levels but with the non-exertional limitations that Plaintiff can:

> perform work limited to simple, routine tasks that can be learned after short demonstration or within 30 days, work that does not require more than simple work-related decisions, work that would allow for variations in productivity, work that would not require independent development of work strategies or identification of workplace needs, occasional interaction with the public, occasional interaction with coworkers or

> supervisors, and work that requires doing the same tasks everyday with
> little variation [in] location, hours, or tasks.

(*Id.* at 1303). The ALJ then proceeded to step four and found that Plaintiff was unable to perform any past relevant work.  (*Id.* at 1308).

The ALJ found at step five that—considering Plaintiff's age, education, work experience, and RFC—there were jobs that exist in significant numbers in the national economy that Plaintiff could perform. (*Id.* at 1308-09). The ALJ ultimately concluded that Plaintiff was not disabled, as defined in the Act, from April 8, 2009, through the date of the ALJ's decision. (*Id.* at 1309-10).

## II.   <u>The Commissioner's Final Determination is Supported by Substantial Evidence and does not Contain a Reversible Legal Error</u>

Plaintiff argues that the ALJ erred in evaluating certain medical opinions of record and that this error warrants vacatur and remand. (*See* Dkt. 9-1 at 1). The Court is unpersuaded by this argument, for the reasons set forth below.

### A.   <u>Weighing of Treating Physician Opinions</u>

In adjudicating a disability application, an ALJ must consider and weigh the evidence of record, including medical opinions. *See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013). "For claims filed before March 27, 2017, the ALJ's decision must account for the 'treating physician rule,'" *Schillo v. Kijakazi*, 31 F.4th 64, 69 (2d Cir. 2022), pursuant to which the opinion of a treating physician "is entitled to controlling weight if it is well supported by clinical and laboratory techniques and is not inconsistent with other substantial evidence." *Herr o/b/o Greis v. Comm'r of Soc. Sec.*, No. 19-CV-815S, 2020 WL 2468415, at *3 (W.D.N.Y. May 13, 2020) (citation omitted). Under this rule, "there are 'specific procedures that an ALJ must follow in

determining the appropriate weight to assign a treating physician's opinion.'" *Schillo*, 31 F.4th at 74-75 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019)). The ALJ first determines if the treating physician's opinion is entitled to controlling weight. *Id.* at 75. If it is not, the ALJ must "explicitly consider certain nonexclusive factors" to determine how much weight to give the opinion. *Id*. Such factors include: "(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Id*. (quoting *Estrella*, 925 F.3d at 95-96). These factors are referred to as the "*Burgess* factors," in reference to *Burgess v. Astrue*, 537 F.3d 117 (2d Cir. 2008). *See Schillo*, 31 F.4th at 75 ("Even though this list of considerations is established by regulation, we discussed them at length in *Burgess* . . . and so they are sometimes referred to as the '*Burgess* factors.'").

In connection with both of these steps, the ALJ must give good reasons—that is, "reasons supported by substantial evidence in the record"—for the weight afforded to the treating physician's opinion. *Id*. Further, at the second step, the ALJ must explicitly apply the relevant factors; "the failure to do so is procedural error and subject to harmless error analysis." *Id*. If the Court concludes that the ALJ has otherwise provided the necessary good reasons and has applied "the substance of the treating physician rule," the error will be deemed harmless. *Id*.

Plaintiff argues that the ALJ violated the treating physician rule in his assessment of the 2011 opinion of Dr. Horatio Capote, Plaintiff's former treating psychiatrist, and the 2021 opinion of Dr. Joshua Morra, Plaintiff's current treating psychiatrist. (*See* Dkt. 9-1 at 17-27). The Court disagrees.

The Court considers first Dr. Capote's opinion. In April 2011, Dr. Capote completed a medical statement in which he opined, among other things, that Plaintiff had marked restriction in her activities of daily living, marked difficulty in maintaining social functioning, and a complete inability to function independently outside of her home due to panic attacks. (Dkt. 6 at 921). The ALJ gave this opinion minimal weight. Plaintiff argues that the ALJ failed to explicitly consider the *Burgess* factors or to give good reasons for his assessment of Dr. Capote's opinion. (Dkt. 9-1 at 22).

Contrary to Plaintiff's argument, the ALJ applied the *Burgess* factors in assessing Dr. Capote's opinion. The ALJ noted that Dr. Capote was Plaintiff's former treating psychiatrist and discussed the longitudinal findings in Dr. Capote's office notes over the period from May 2011 to November 2014. (Dkt. 6 at 1306). The ALJ explained that these notes disclosed Dr. Capote's "continued clinical observation of stable affect, essentially normal insight and judgment, rare panic attacks, and progressive symptom improvement with continued psychotherapy every-two-to-three weeks[.]" (*Id.*; *see also id. at* 1237-81). The ALJ thus expressly took into account Dr. Capote's specialization as a psychiatrist, his years-long treatments of Plaintiff, and the frequency of her treatment.

The ALJ further explained that testifying medical expert Dr. Chukwuemeka Efobi had described Dr. Capote's opinion as an "outlier," and noted that it conflicted with other opinions of record, including "the opinion of [Plaintiff's] other treating psychiatrist." (*Id.* at 1306). The ALJ noted that Dr. Efobi had testified that "the incongruity between Dr. Capote's office notes and his opinion did not support the

symptom severity contained in Dr. Capote's opinion." (*Id.*). The ALJ thus also expressly considered the amount of medical evidence supporting Dr. Capote's opinion and its consistency with the other medical evidence of record.

The ALJ also provided good reasons for the weight afforded to Dr. Capote's opinion—namely, the inconsistency with his own office notes and the inconsistency with the other medical opinions of record, including specifically Dr. Efobi's and Dr. Morra's opinions. *See, e.g., Snyder v. Colvin*, 667 F. App'x 319, 320 (2d Cir. 2016) ("The opinion of a treating physician is not binding if it is contradicted by substantial evidence, and a consulting physician report may constitute such evidence."); *Campbell v. Astrue*, No. 12-CV-6103T, 2013 WL 1221931, at *11 (W.D.N.Y. Mar. 25, 2013) ("When a treating physician's opinions are inconsistent with even his own treatment notes, an ALJ may properly discount those opinions.").

Plaintiff accuses the ALJ of "cherry-picking" the contents of Dr. Capote's office notes, identifying evidence therein that she claims supported the more restrictive limitations Dr. Capote identified. "[A]n allegation of cherry-picking is seldom successful because crediting it would require a court to re-weigh record evidence," and "what a claimant may label as cherry-picking can often be described more neutrally as weighing the evidence." *Lisa T. v. Kijakazi*, No. 3:20-CV-1764 (SVN), 2022 WL 2207613, at *3 (D. Conn. June 21, 2022) (quotations and citations omitted). While Plaintiff has identified a handful of findings that she asserts are consistent with the extreme limitations identified by Dr. Capote in 2011, those findings are themselves relatively benign, consisting of items such as "variable eye contact," "fair judgment," and "constricted affect." (Dkt. 9-1 at 23). Plaintiff also ignores entirely the

ALJ's observation that Dr. Capote discussed with Plaintiff "the merits of being gainfully employed and how this would likely improve her self-esteem as well as financial situation." (Dkt. 6 at 1306; *see id.* at 1259). I find no merit in the assertion that the ALJ engaged in impermissible "cherry-picking."

Plaintiff also argues that Dr. Capote's opinion was "largely consistent with other treatment." (Dkt. 9-1 at 24). This argument consists of nothing more than Plaintiff's disagreement with the ALJ's weighing of the evidence. For example, Plaintiff argues that the ALJ was incorrect when he stated that Dr. Capote's opinion was inconsistent with Dr. Morra's opinion. (*Id.*). But Plaintiff also acknowledges that Dr. Morra's opinion was "less restrictive" than Dr. Capote's. (*Id.*).[2] While Plaintiff gives more weight to the similarities in these opinions than the differences, that kind of weighing of evidence and resolution of genuine disputes is left to the ALJ, and not to this Court. *See Burgess*, 537 F.3d at 128; *Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002).

Plaintiff also criticizes the ALJ's decision to credit Dr. Efobi's opinion over Dr. Capote's opinion, because Dr. Efobi did not examine Plaintiff. (Dkt. 9-1 at 25-27). However, the Second Circuit has noted that the applicable regulations "permit the opinions of nonexamining sources to override treating sources' opinions provided they are supported by evidence in the record." *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995). Here, the ALJ explained that Dr. Efobi, a board-certified psychiatrist with

---

[2]     Dr. Capote opined that Plaintiff was "markedly impaired" in a number of abilities in which Dr. Morra indicated that she was "limited but satisfactory." (*Compare* Dkt. 6 at 922-23 *with* Dkt. 7 at 142).

nearly 30 years of experience, had reviewed the entire medical record, including the clinical observations and office notes of all of Plaintiff's treatment providers. (Dkt. 6 at 1308). The ALJ further explained that Dr. Efobi had supported his opinion with a "detailed rationale" and "pinpoint citations[.]" (*Id.*). Under these circumstances, it was within the ALJ's discretion to credit Dr. Efobi over Dr. Capote. *See Camille v. Colvin*, 652 F. App'x 25, 28 (2d Cir. 2016).[3]

Turning to Dr. Morra's opinion, Dr. Morra completed a mental residual functional capacity questionnaire in April 2021 in which he opined that Plaintiff was "limited but satisfactory" in many of the "mental abilities and aptitudes needed to do unskilled work," but that she was "seriously limited" in: maintaining regular attendance and being punctual within customary tolerances; working in coordination with or proximity to others without being unduly distracted; making simple work-related decisions; completing a normal workday or workweek without interruptions from psychologically based symptoms; performing at a consistent pace without an unreasonable number and length of rest periods; responding appropriately to changes in a routine work setting; and dealing with normal work stress. (Dkt. 7 at 142). As to

---

[3]    Plaintiff also makes a cursory argument that it was error for the ALJ to give "great weight" to the opinion of consultative examiner Dr. Jeanine Ippolito, because Dr. Ippolito only examined Plaintiff on a single occasion. (Dkt. 9-1 at 27). This argument is no more meritorious that Plaintiff's argument regarding Dr. Efobi. The ALJ explained that Dr. Ippolito performed "a thorough examination that included objective memory testing performed by an acceptable medical provider" and that her opinion was "generally consistent with the evidence of record[.]" (Dkt. 6 at 1307). Plaintiff does not challenge these conclusions. Under these circumstances, the Court finds no reversible error in the weight afforded to Dr. Ippolito's opinion. *See, e.g., Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) ("The report of a consultative physician may constitute . . . substantial evidence.")

the mental abilities and aptitudes needed to do semiskilled and skilled work, Dr. Morra opined that Plaintiff was "seriously limited" or "unable to meet competitive standards." (*Id.* at 143). Dr. Morra further opined that Plaintiff was "seriously limited" in her abilities to interact appropriately with the general public, travel in unfamiliar places, and use public transportation. (*Id.*).

The ALJ assigned "limited weight to certain aspects of Dr. Morra's opinion." (Dkt. 6 at 1307). Specifically, the ALJ found that Dr. Morra's opinion regarding Plaintiff's abilities to engage with the general public, travel to unfamiliar places, respond appropriately to changes in a work setting, deal with normal work stress in an unskilled work-like setting, perform at a consistent pace, be punctual, and work in coordination with others were inconsistent with Plaintiff's part-time work delivering food to people's homes. (*Id.*). The ALJ further found that Dr. Morra's treatment records were inconsistent with certain aspects of his report, including his statements that Plaintiff had "difficulty thinking or concentrating" and "psychomotor agitation or retardation." (*Id.*). However, the ALJ credited significant portions of Dr. Morra's opinion. (*Id.*).

Plaintiff argues that the ALJ failed to appropriately apply the *Burgess* factors in weighing Dr. Morra's opinion. (Dkt. 9-1 at 18-20). Again, the Court disagrees. The ALJ considered the fact that Dr. Morra was Plaintiff's "current treating psychiatrist" and that he "met with [Plaintiff] every 3 months for medication management[.]" (Dkt. 6 at 1307). He also considered whether Dr. Morra's opinion was supported by and consistent with his treatment records. (*Id.*). And, as previously noted, the ALJ

- 12 -

considered the inconsistency between Dr. Capote's and Dr. Morra's opinions when weighing the medical evidence. (*Id*. at 1306).

As with Dr. Capote's opinion, Plaintiff accuses the ALJ of "cherry-picking" Dr. Morra's treatment notes. (Dkt. 9-1 at 19). This argument lacks merit. Plaintiff asserts that Dr. Morra's treatment records noted her complaints of "difficulty with concentration, memory, and world finding" and "of involuntary muscle jerking and restlessness." (Dkt. 9-1 at 19). But the ALJ specifically explained that the treatment records lacked any "clinical appreciation" of psychomotor agitation or psychomotor retardation, and that Dr. Morra relied "solely upon [Plaintiff's] self-report of these symptoms . . ., which tends to diminish his reliability." (Dkt. 6 at 1307). In other words, the ALJ did not ignore the treatment records relied upon by Plaintiff; he simply did not give them the same weight Plaintiff thinks he ought to have.

Plaintiff also argues that her part-time work as a food delivery driver was not actually inconsistent with Dr. Morra's opinion. (Dkt. 9-1 at 21-22). However, the ALJ was within his discretion to conclude that Plaintiff's ability to work as a part-time food delivery driver was inconsistent with certain aspects of Dr. Morra's opinion. *See, e.g., Distefano v. Berryhill*, 363 F. Supp. 3d 453, 473 (S.D.N.Y. 2019) (finding that ALJ appropriately gave less than controlling weight to treating physician's opinion based, in part, on the claimant's performance of part-time work as a stagehand). The hearing testimony identified by Plaintiff (*see id*.) does not contradict the ALJ's conclusions, but is consistent with his determination that Plaintiff should be limited to "work that would allow for variations in productivity" and only occasional interaction with the public, coworkers, or supervisors (Dkt. 6 at 1307).

- 13 -

There is no merit to Plaintiff's argument that the ALJ failed to give good reasons for the weight he assigned to Dr. Capote's and Dr. Morra's opinions. Further, the ALJ appropriately applied the *Burgess* factors in making his determinations.

### B.    <u>Consideration of Other Source Opinions</u>

Plaintiff also argues that the ALJ erred in rejecting the opinions of Plaintiff's mental health counselors Joellen Dinse and Alicia Coulter. (Dkt. 9-1 at 28-30). The ALJ incorporated by reference the prior ALJ's assessment of these opinions, rendered in 2015. (Dkt. 6 at 1306). In the 2015 decision, the ALJ gave these opinions little weight due to their inconsistency with the other medical evidence of record. (*Id.* at 1376-80).

Under the regulations applicable to Plaintiff's claim, Ms. Dinse and Ms. Coulter are not "acceptable medical sources" and are instead considered "other sources." *Conlin ex rel. N.T.C.B. v. Colvin*, 111 F. Supp. 3d 376, 386 (W.D.N.Y. 2015). "[T]he ALJ is free to decide that the opinions of other sources are entitled to no weight or little weight, though those decisions should be explained." *Id.* (quotation and alteration omitted).

 Plaintiff's arguments regarding Ms. Dinse's and Ms. Coulter's opinions essentially mirror her arguments regarding Dr. Capote's and Dr. Morra's opinions, and are unpersuasive for reasons already discussed by the Court. Further, Plaintiff's assertion that the ALJ must not have considered these opinions' purported consistency with Dr. Morra's opinion (*see* Dkt. 9-1 at 29-30) fails as a factual matter. These opinions were not consistent with Dr. Morra's opinion. Ms. Coulter and Dr. Morra reached different conclusions with respect to 9 out of 16 (*i.e.* more than half)

of the identified mental abilities and aptitudes needed to do unskilled work. (*Compare* Dkt. 6 at 1292 *with* Dkt. 7 at 142). Ms. Dinse and Dr. Morra reached different conclusions with respect to 12 out of 16 (*i.e.* 75 percent) of these abilities and aptitudes. (*Compare* Dkt. 6 at 874 *with* Dkt. 7 at 142). In light of these inconsistences, and for the other reasons discussed above, the ALJ was within his discretion to credit significant portions of Dr. Morra's opinion, but to discount those portions of Dr. Morra's opinion that were inconsistent with Dr. Efobi's opinion, Dr. Ippolito's opinion, Plaintiff's activities of daily living (including her part-time work as a food delivery driver), and the other medical evidence of record.

In sum, the Court finds no reversible error in the ALJ's consideration of the medical opinions of record.

## CONCLUSION

For the foregoing reasons, the Commissioner's motion for judgment on the pleadings (Dkt. 10) is granted, and Plaintiff's motion for judgment on the pleadings (Dkt. 9) is denied.  The Clerk of Court is directed to enter judgment and close this case.

SO ORDERED.

_____
COLLEEN D. HOLLAND
United States Magistrate Judge

Dated:        September 19, 2025
              Rochester, New York